FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

UNITED STATE DISTRICT COURT FOR THE MIDDLE DISTRICT
OF LOUISIANA

2006 MAR 31  P 3: 00

SIGN _____
BY DEPUTY CLERK

06CV254 JJB-SCR

**RONALD WILLIAMS #114650**

Enter above the full name of the plaintiff or plaintiffs in this action

**VERSUS**

**CAPT. JUAN ANTHONY; LT. KEVIN JEANSONNE;**

**LT. ROBERT ROWE; LT. JOSEPH HOOKER;**

**SGT. ROBERT KING**

Enter above the full name of the defendant or defendants in this action.

**COMPLAINT**

I.  **PREVIOUS LAWSUITS:**

   a.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

   Yes  (  )      No  ( X )

   b.  If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

   1.  Parties to this previous lawsuit

   Plaintiffs:    NA

   Defendants:

1.

2.   Court (if federal court, name the district; if state court name the parish):

   NA

3.   Docket number:      NA

4.   Name of Judge to whom case was assigned:

   NA

5.   Disposition (for example, was the case dismissed? Was it appealed? Is it still pending?):

   NA

6.   Approximate date of filing lawsuit:     NA

7.   Approximate date of disposition:     NA

II.   PLACE OF PRESENT CONFINEMENT:      LA. STATE PENITENTIARY

   a.   Is there a prisoner grievance procedure in this institution?

   Yes   ( X )     No   (   )

   b.   Did you present the facts relating to your complaint in the prisoner grievance procedure?

   Yes   ( X )     No   (   )

   c.   If your answer is YES:

   1.   What steps did you take?     Filed an ARP to the Warden of the Prison, after denial

   I appealed to the Secretary of the Department of Corrections and was denied .

   2.   What was the result?     Denied by Warden on July 12,2005 - Denied by the Secretary on August 26, 2005

   d.   If your answer is NO, explain why not?     N/A

2.

III. PARTIES

(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

a.  Name of plaintiffs:  RONALD WILLIAMS #114650

    Address:  MAGNOLIA - 2, LA. STATE PENITENTIARY, ANGOLA, LA 70712

In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions, and places of employment of any additional defendants.)

b.  Defendant  JUAN ANTHONY- CAPTAIN                                              is employed as

    SECURITY OFFICER                    at    LA. STATE PENITENTIARY

    ANGOLA, LA. 70712

c.  Additional Defendants:    KEVIN JEANSONNE - LIEUTENANT ; ROBERT ROWE - LIEUTENANT;

    JOSEPH HOOKER - LIEUTENANT; ROBERT KING - SERGEANT [EACH DEFENDANT ARE

    SECURITY OFFICERS EMPLOYED AT LOUISIANA STATE PENITENTIARY, ANGOLA, 70712]

IV. STATEMENT OF CLAIM:

State here as briefly as possible the FACTS of your case. Describe how each defendant is involved. Include also names of other persons involved, dates and places. DO NOT GIVE ANY LEGAL ARGUMENTS OR CITE ANY CASES OR STATUTES. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.

1.

In May 2005, the plaintiff filed an A.R.P., stemming from an April 29, 2005 incident that resulted in the plaintiff suffering physical injuries. [See: Attached Copy of A.R.P. - Exhibit 1].

2.

On June 15, 2005, the Warden at the Louisiana State Penitentiary accepted plaintiff's A.R.P., an it was assigned number LSP-2005-1534. [See: Attached Copy- Exhibit 2].

3.

On July 12, 2005, the Warden, through his assistant Warden's answered plaintiff's A.R.P., and denying relief.
[See: Attached Copy of First Step Response Form Dated 7/12/2005 - Exhibit 3].

4.

Within the (5) five days allowed to file a response, the plaintiff filed his response to the Warden's denial. [See: Attached Copy of Response To Second Step A.R.P. - Dated July 27, 2005 - Exhibit 4].

3.

## STATEMENT OF THE CLAIM [CONT'D]

5.

On August 26, 2005, the Secretary of the Department of Corrections denied relief. [See: Attached Copy of Second Step Response Form - Dated 8-26-2005 - Exhibit 5].

6.

In plaintiff's A.R.P., which was presented the Warden and the Secretary of the Department of Corrections, he argued that On April 29, 2005, I was sitting on Cypress - 2 ledge by the handicap ramp along with other inmates. For some unknown reason, I became light-headed, dizzy and my vision became blurred, the next thing I recall is falling head first to the ground or to the side of the handicap ramp. Apparently I passed out, during the fall I sustained serious injury to the right side of my head. I recall inmates leaving the area to get assistance.

7.

Thereafter, Captain Juan Anthony and Lt. Jeansome arrived. When Capt. Anthony arrived he asked me what had happened. I explained to him that I became light-headed, dizzy and my vision became blurred, the next thing I recall is falling head first to the ground or to the side of the handicap ramp. At that time, Capt. Anthony and Lt. Jeansome removed my shirt obviously looking for other injury (fight injuries) which there wasn't any. Without calling for an ambulance due to my injuries and excessive bleeding, Capt. Anthony and Lt. Jeansome made me walk to the East Yard Captain's Office. On the way to the Captain's Office I informed Captain Anthony that I was feeling light-headed and dizzy again, at this time Capt. Anthony grabbed me keeping me from falling, with his assistance I staggered on to the Captain's Office.

8.

After a brief stay at the Captain's Office, Capt. Anthony and I proceeded walking towards the hospital, by the time we got to the MPO I told Capt. Anthony I needed to rest because I felt I was going to pass out again, so he put me in one of those side rooms in the MPO, and sent for handcuffs and leg irons.

9.

At this time, Lt. Rowe from the Main Prison Cellblock was present, and Capt. Anthony asked him to examine my injuries for the possibility of a fight. After a few jokes were made by Lt. Rowe, Capt. Anthony and I proceeded towards the hospital again. By me walking so slow, Capt. Anthony asked me if I was going to make it, I told him no, because I was feeling real light-headed and real dizzy. Between A-Block and the A-Building I was about to pass out again, and Capt. Anthony Grabbed my jumpsuit and held me up until we got to the A-Building, where Capt. Anthony made the comment, "Damn, I knew I should have called for an ambulance". When we stopped at the A-Building, Capt. Anthony called the emergency room on his radio, and informed them that he needed assistance, and he described my injuries.

10.

An EMT by the name of "David" met us at the A-Building, he examined my injuries and questioned me about how I sustained the injuries. I was taken to the hospital in a "Wheel Chair". When I got to the emergency room the medical staff did not check my vital signs, blood pressure (in which I have high blood pressure), the only thing they did was x-ray my head and stitch my wound. I was thereafter placed in administrative lockdown.

11.

While in administrative lockdown, I was denied dressing changes, even though I showed my duty status/medical slip to Lt. Rowe and the Sgt. that was working the tier, I informed them that I was supposed to have dressing changes everyday for (10) ten days and sutures removed in (10) ten days, this were per orders of Dr. Sylvester, MD. The duty status was issued on April 29, 2005 and expired on May 9, 2005.

12.

I called my family and informed them of the treatment that I was receiving. I had the same problem with D-Team and Lt. Hooker and Sgt. King. I showed him my duty status/medical slip and referral slip, but I was still denied medical treatment. When I finally did see an EMT, I was instructed to use soap on my face and to put lotion on the area where the stitches were. I informed the EMT that I am in administrative lockdown and I don't have access to those items. A referral slip was given to me on May 2, 2005. I was denied proper medical treatment while in administrative lockdown from April 29, 2005 thru May 2, 2005. For the type of injury that I sustained, I shouldn't have had to go through that type of neglect.

13.

From the beginning of this whole ordeal, from the time security saw that I had a serious head injury medical care should have been properly administered. Instead, I was made to walk all the way from down the walk from Cypress Unit to the A-Building (which is probably a mile and a half) with a serious head injury and excessive bleeding. When security noticed my injuries, at that time the medical staff should have been summoned and an ambulance should have been called for. It wasn't Capt. Anthony's call to determine my medical condition, that is for the Medical Staff to determine. Capt. Anthony and Lt. Jeansome was negligent on their part for not calling for an ambulance immediately after seeing my head injuries.

14.

Every since that incident occurred, I have been experiencing severe headaches and temporary dizzy spells. At times when I walk I become light-headed and I have to stop and regain my balance. I feel that this is a direct result of the injury and the non-responsive/delayed medical treatment I received on April 29, 2005. Because prior to this incident I was not having these problems. Yes, it is true I have been diagnosed with high blood pressure, however, the prolonged medical care/treatment did not make things any better. And being in administrative lockdown without proper medical treatment/dressing changes did not make things any better, especially when I showed documented proof to security in support of what I was asking for. My pleas for medical treatment went ignored.

15.

Since the filing of plaintiff's A.R.P. and the deposition thereof, the plaintiff has since been provided some medical attention. Plaintiff has been sent to Earl K. Long for medical observations, such as Scat Scans and MRI's. The test results showed that plaintiff suffered damage as a result of the April 20, 2005 incident and due to the late medical response by the administration and listed defendant(s).

V. RELIEF:

State briefly exactly what you want the court to do for you. MAKE NO LEGAL ARGUMENTS. CITE NO CASES OR STATUTES.

Hold all listed and named defendants individually solidary for compensation and prescription purposes.

1. $25,000.00 (Twenty Five Thousand dollars) for Pain and Suffering.

2. $25,000.00 (Twenty Five Thousand dollars) in Punitive Damages.

3. $25,000.00 (Twenty Five Thousand dollars) for Medical Neglect.

4. $25,000.00 (Twenty Five Thousand dollars) Compensatory Damages

5. Jury trial on all issues triable by jury.

6. Any and all relief I'm entitled to upon the facts of these claims and evidence to be presented.

Signed this __28__ day of __March__, 19 __2006__

_____
(Signature of Plaintiff or Plaintiffs)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on:

_____
Signature of Movant

_____
Signature of Attorney (if Any)

4.

<u>REQUEST FOR ADMINISTRATIVE REMEDY PROCEDURE</u>

May 24, 2005

RONALD WILLIAMS #114650
MAGNOLIA - 2
LA. STATE PRISON
ANGOLA, LA. 70712

<u>ISSUE</u>:

On April 29, 2005, I was sitting on Cypress - 2 ledge by the handicap ramp along with other inmates. For some unknown reason, I became light-headed, dizzy and my vision became blurred, the next thing I recall is falling head first to the ground or to the side of the handicap ramp. Apparently I passed out, during the fall I sustained serious injury to the right side of my head. I recall inmates leaving the area to get assistance. Thereafter, Captain Juan Anthony and Lt. Jeansome arrived. When Capt. Anthony arrived he asked me what had happened. I explained to him that I became light-headed, dizzy and my vision became blurred, the next thing I recall is falling head first to the ground or to the side of the handicap ramp. At that time, Capt. Anthony and Lt. Jeansome removed my shirt obviously looking for other injury (fight injuries) which there wasn't any. Without calling for an ambulance due to my injuries and excessive bleeding, Capt. Anthony and Lt. Jeansome made me walk to the East Yard Captain's Office. On the way to the Captain's Office I informed Captain Anthony that I was feeling light-headed and dizzy again, at this time Capt. Anthony grabbed me keeping me from falling, with his assistance I staggered on to the Captain's Office.

After a brief stay at the Captain's Office, Capt. Anthony and I proceeded walking towards the hospital, by the time we got to the MPO I told Capt. Anthony I needed to rest because I felt I was going to pass out again, so he put me in one of those side rooms in the MPO, and sent for handcuffs and leg irons. At this time, Lt. Rowe from the Main Prison Cellblock was present, and Capt. Anthony asked him to examine my injuries for the possibility of a fight. After a few jokes were made by Lt. Rowe, Capt. Anthony and I proceeded towards the hospital again. By me walking so slow, Capt. Anthony asked me if I was going to make it, I told him no, because I was feeling real light-headed and real dizzy. Between A-Block and the A-Building I was about to pass out again, and Capt. Anthony Grabbed my jumpsuit and held me up until we got to the A-Building, where Capt. Anthony made the comment, "Damn, I knew I should have called for an ambulance". When we stopped at the A-

<em>EXhibiT-1</em>

Building, Capt. Anthony called the emergency room on his radio, and informed them that he needed assistance, and he described my injuries. An EMT by the name of "David" met us at the A-Building, he examined my injuries and questioned me about how I sustained the injuries. I was taken to the hospital in a "Wheel Chair". When I got to the emergency room the medical staff did not check my vital signs, blood pressure (in which I have high blood pressure), the only thing they did was x-ray my head and stitch my wound. I was thereafter placed in administrative lockdown.

While in administrative lockdown, I was denied dressing changes, even though I showed my duty status/medical slip to Lt. Rowe and the Sgt. that was working the tier, I informed them that I was supposed to have dressing changes everyday for (10) ten days and sutures removed in (10) ten days, this were per orders of Dr. Sylvester, MD. The duty status was issued on April 29, 2005 and expired on May 9, 2005. I called my family and informed them of the treatment that I was receiving. I had the same problem with D-Team and Lt. Hooker and Sgt. King. I showed him my duty status/medical slip and referral slip, but I was still denied medical treatment. When I finally did see an EMT, I was instructed to use soap on my face and to put lotion on the area where the stitches were. I informed the EMT that I am in administrative lockdown and I don't have access to those items. A referral slip was given to me on May 2, 2005. I was denied proper medical treatment while in administrative lockdown from April 29, 2005 thru May 2, 2005. For the type of injury that I sustained, I shouldn't have had to go through that type of neglect.

From the beginning of this whole ordeal, from the time security saw that I had a serious head injury medical care should have been properly administered. Instead, I was made to walk all the way from down the walk from Cypress Unit to the A-Building (which is probably a mile and a half) with a serious head injury and excessive bleeding. When security noticed my injuries, at that time the medical staff should have been summoned and an ambulance should have been called for. It wasn't Capt. Anthony's call to determine my medical condition, that is for the Medical Staff to determine. Capt. Anthony and Lt. Jeansome was negligent on their part for not calling for an ambulance immediately after seeing my head injuries. Every since that incident occurred, I have been experiencing severe headaches and temporary dizzy spells. At times when I walk I become light-headed and I have to stop and regain my balance. I feel that this is a direct result of the injury and the non-responsive/delayed medical treatment I received on April 29, 2005. Because prior to this incident I was not having these problems. Yes, it is true I have been diagnosed with high blood pressure, however, the prolonged medical care/treatment did not make things any better. And being in

$EXhibit-1$

administrative lockdown without proper medical treatment/dressing changes did not make things any better, especially when I showed documented proof to security in support of what I was asking for. My pleas for medical treatment went ignored.

RELIEF:

(1):     I request to be compensated monetary damages in the amount of $25,000.00 (Twenty-Five Thousand Dollars) for the Pain & Suffering I endured as the result of not being provided immediate and prompt medical treatment for my head injuries; (2) I request that Capt. Anthony and Lt. Jeansome be ordered to pay monetary damages in the amount of  $25,000.00 (Twenty-Five Thousand Dollars) for punitive damages; (3) I request to be compensated monetary damages in the amount $25,000.00 (Twenty-Five Thousand Dollars) for medical neglect by the R.E. Barrow Treatment Center Medical staff for not providing adequate and proper medical treatment; (4) I request to be compensated monetary damages in the amount $25,000.00 (Twenty-Five Thousand Dollars) for medical neglect by the security officers who refused to take me to dressing changes while in was housed in administrative lockdown; (5) I reserve the right to add additional defendant(s) upon discovering their names to be included in any Civil Action that may occur as the result of this A.R.P., and I reserve the right to request additional monetary damages in the event my medical condition worsen over the course of this pending litigation.

Ronald Williams #114650
Magnolia - 2
La. State Prison
Angola, La. 70712

*Exhibit-1*

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2005 -1534

TO:  <u>RONALD WILLIAMS 114650</u>          <u>M.P.- MAGNOLIA 2</u>
     Offender's Name and Number              Living Quarters


          <u>4/29/2005</u>
          Date of Incident


X               ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                issued within 40 days of this date.

                REJECTED:  Your request has been  rejected for the following reason(s):


    <u>06/15/2005</u>                              <u>C. David James</u>
        Date                                Warden's Signature or Designee


$Exhibit - 2$

FORM ARP-2

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

NUMBER <u>LSP – 05-1534</u>

# FIRST STEP RESPONSE FORM
### (UNIT HEAD)

TO:    <u>Ronald Williams  #114650</u>                     <u>Mag 2  LSP</u>
         (Offender's Name and Number)                                      (Living Unit)


FROM: <u>Burl Cain</u>                                          <u>Warden</u>
         Unit Head                                                    Title


Your complaints and allegation have been investigated and the following was found.


     In your ARP, you allege on April 29, 2005, Captain Juan Anthony, Lieutenant Kevin Jeansonne, Lieutenant Robert Rowe, Lieutenant Joseph Hooker, and Sergeant Robert King denied you proper medical attention. You also allege they acted in a nonprofessional manner, while transporting you to the Treatment Center. Statements have been received from all involved, denying your allegations. Captain Juan Anthony and Lieutenant Kevin Jeansonne, East Yard C Team Supervisors, state that you were asked whether or not you needed an ambulance and you stated no; you could walk. You were then escorted to the Robert E. Barrow Treatment Center for possible treatment and evaluation. Captain Anthony also states that at no time did he act in an unprofessional manner while addressing your injuries. Lieutenant Robert Rowe, West Yard C Team Supervisor, states that at no time did he act in an unprofessional manner nor did he deny you dressing changes. Lieutenant Joseph Hooker, West Yard Supervisor, and Sergeant Robert King both states that they never denied you medical attention nor was they made aware of your medical referral. Capt. Juan Anthony, Lt. Kevin Jeansonne, Lt. Robert Rowe, Lt. Joseph Hooker, and Sgt. Robert King are all good officers and carry themselves in a professional manner at all times. You have not provided sufficient evidence to substantiate your claim. Therefore, your request for Administrative Remedy is denied at this level.


PREPARED BY: _____        APPROVED BY: _____
          Doug Durrett, A/W 1                                         Donald Barr A/W 2


<u>7/12/05</u>                                                      _____
     Date                                                       Unit Head's Signature


**INSTRUCTIONS TO OFFENDER:** If you are not satisfied with this response, you may go to STEP2 by filling out the second step section of ARP-1 and sending the pink copies of ARP-1 and ARP-2 to the Legal Programs Department so that your claim may be forwarded to the Secretary for consideration at the second step. These forms must reach the Legal Programs Department within 5 days of receipt of this response.

*EXhibit – 3*

<u>RESPONSE TO SECOND STEP A.R.P.</u>

<u>NO: LSP-2005-1534</u>

DATE: July *24*, 2005

RONALD WILLIAMS #114650
MAGNOLIA - 2
LA. STATE PRISON
ANGOLA, L.A. 70712

I am not satisfied with the respondent's answer because: I was not granted the relief I requested. I found the respondent's answer to be bias and contradictive in light of the policy which governs handling medical emergencies.

The respondent incorrectly found the security officers in this matter to be credible and good correctional officers. The respondent findings in this matter is refuted by the officers actions in this matter, in particularly, Capt. Anthony, who should have called for an ambulance once he noticed my medical condition. It is irregardless as to whether or not I supposedly stated I could walk to the hospital, the proper procedure would have been for Capt. Anthony to called for an ambulance. Nothing he says can justify him not calling for an ambulance once he noticed my head injury. Capt. Anthony asking me if I could walk to the hospital is just like asking a person who just fell head first on the floor off a ladder and sustained a serious head injury, if he could walk to the hospital. For the respondent to go alone with this is just like co-signing the improper procedures for handling medical emergencies, which is also in direct conflict with the L.S.P. policy governing medical emergencies.

I also feel that the respondent was incorrect in asserting the Lt. Hooker and Sgt. King acted properly concerning my medical referral. Once the EMS issues a referral, security at that housing unit is usually notified of the referral, and so is the hospital staff notified, and usually notifies the housing unit personnel to ensure that the inmate referral appointment is kept. In this matter, it was security duty to see that my medical referral appointment was kept. Obviously, that didn't happen in this matter, and

*Exhibit-4*

the respondent tries vigorously to shift the blame from his officers that he feel are so credible, but they ignores L.S.P. Policy.

Contrary to the respondent's answer, I presented sufficient evidence to substantiate my allegations, the correct procedures for my medical condition was not followed, that within itself is sufficient proof of my allegations.

Seeing that I won't obtain the relief I requested, this is apparently a matter for the courts to decide.

Ronald Williams #114650

EXhibit - 4

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: LSP-2005-1534

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: WILLIAMS, RONALD    114650                          LSP
    Inmate Name and Number                              Living Unit

Response to Request Dated 07/24/2005, Received in this Office on 07/27/2005:

Your request for an Administrative review of ARP #LSP-2005-1534 has been received. Your allegations have been investigated and considered. Written statements denying your allegations have been provided. There is no reason to doubt the credibility of these officers. You have failed to provide any evidence to substantiate your allegations or that would cause us to believe otherwise. Therefore, the first step response and the statement of the officers have been determined to be clear and concise and have adequately addressed your issues.

Your request for administrative relief is denied.

_8-26-05_____                    _Linda Ramsey_____
         Date                              Secretary's Signature or His Designee

EXHIBIT- 5